WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Thomas F. McBride, Jr.,<br><br>    Plaintiff,<br><br>vs.<br><br>Carolyn W. Colvin, Acting Commissioner of Social Security Administration,<br><br>    Defendant. | No. CV-13-01311-PHX-SPL<br><br>**ORDER** |

Plaintiff Thomas F. McBride, Jr., seeks judicial review and reversal of the final decision of the Commissioner of the Social Security Administration ("SSA") denying his application for Social Security disability benefits.

**I. Background**

On September 6, 2009, Plaintiff filed an application for Social Security disability insurance benefits under Title II of the Social Security Act. (AR[1] 35, 143-46.) Plaintiff alleged that he became unable to work on December 30, 2008 due to his disabling conditions of depression, neuropathy, diabetes, vision and hearing problems, spina bifida, learning disabilities, and asthma. (AR 90, 143.) On March 9, 2010, the SSA denied Plaintiff's application (AR 90-93), and on August 13, 2010, the SSA denied Plaintiff's request for reconsideration (AR 98-100). Pursuant to Plaintiff's request (AR 101-102), a hearing was held on January 27, 2012, before Administrative Law Judge ("ALJ")

---

[1] Administrative Record.

Thomas Cheffins (AR 35-75). On February 10, 2012, the ALJ issued a decision ruling that Plaintiff is not disabled and is not entitled to disability benefits. (AR 18-28.) On May 6, 2013, the Appeals Council denied Plaintiff's request for review of the ALJ's decision, and the decision became the final decision of the Commissioner of the SSA. (AR 1-6.)

Having exhausted the administrative review process, on July 1, 2013, Plaintiff sought judicial review of the ALJ's decision by filing a Complaint in this Court pursuant to 42 U.S.C. § 405(g). (Doc. 1.) On February 21, 2014, Plaintiff filed an Opening Brief, seeking remand to the ALJ for an award of disability benefits for the period of December 30, 2008 through February 10, 2012. (Doc. 13 at 21-24.) On March 24, 2014, Defendant filed a Response (Doc. 14), and on April 8, 2014, Plaintiff filed a Reply (Doc. 15).

## II. Legal Standards

To be eligible for Social Security disability benefits, a claimant must show an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(a); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

A five-step procedure is used to determine whether an applicant is eligible for disability insurance benefits:

> In step one, the Secretary determines whether a claimant is currently engaged in substantial gainful activity. If so, the claimant is not disabled. In step two, the Secretary determines whether the claimant has a "medically severe impairment or combination of impairments," as defined in 20 C.F.R. § 404.1520(c). If the answer is no, the claimant is not disabled. If the answer is yes, the Secretary proceeds to step three and determines whether the impairment meets or equals a "listed" impairment that the Secretary has acknowledged to be so severe as to preclude substantial gainful activity. If this requirement is met, the claimant is conclusively presumed

> disabled; if not, the Secretary proceeds to step four. At step four, the Secretary determines whether the claimant can perform "past relevant work." If the claimant can perform such work, [he] is not disabled. If the claimant meets the burden of establishing an inability to perform prior work, the Secretary must show, at step five, that the claimant can perform other substantial gainful work that exists in the national economy.

*Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998) (citing 20 CFR §§ 404.1520, 416.920).

In reviewing the decision of the ALJ, the Court must affirm the ALJ's decision unless it contains legal error or is not supported by substantial evidence. *Orn v. Astrue,* 495 F.3d 625, 630 (9th Cir. 2007); *Marcia v. Sullivan*, 900 F.2d 172, 174 (9th Cir. 1990). Substantial evidence means more than a mere scintilla, but less than a preponderance; "it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007); *see also Reddick,* 157 F.3d at 720. In determining whether substantial evidence supports the ALJ's decision, the Court considers the record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusions. *Reddick*, 157 F.3d at 720; *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993). The ALJ is responsible for resolving conflicts, ambiguity, and determining credibility. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). Where "the evidence can reasonably support either affirming or reversing a decision, [the Court] may not substitute its judgment for that of [the ALJ]." *Andrews*, 53 F.3d at 1039. "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn*, 495 F.3d at 630 (internal quotations and citations omitted). The Court reviews "only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Id.*

**III.  Discussion**

Applying the five-step sequential framework, the ALJ ruled that Plaintiff is not disabled and is not entitled to disability benefits. (AR 21-28.) At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since December 30, 2008, his alleged disability onset date. (AR 20.) At step two, the ALJ found that Plaintiff had the following severe impairments: neuropathy in his feet and arms; diabetes mellitus; hearing and vision problems; learning disability; asthma; and spina bifida. (AR 20.) At step three, the ALJ found that Plaintiff's impairments did not meet or equal one of the listed impairments described in 20 C.F.R. § 404, Subpart P, Appendix 1. (AR 21-22.)

At step four, the ALJ found that Plaintiff had the residual functional capacity[2] to perform medium work as defined in 20 C.F.R. § 404.1567(c), with some limitations.[3] (AR 22.) Based on his residual functional capacity finding and the testimony of the vocational expert, the ALJ found that Plaintiff could no longer perform his past work. At step five, the ALJ found that Plaintiff could, however, perform other jobs in the national economy such as grocery bagger, warehouse worker, and meat clerk. (AR 27-28.) The ALJ therefore concluded that Plaintiff was not disabled as defined by the Social Security Act.

Plaintiff argues this Court should reverse the ALJ's decision and remand the case for a computation of benefits because: (1) the ALJ erred in assessing the medical opinion evidence; (2) the ALJ erred in discrediting Plaintiff's symptom testimony; and (3) the ALJ erred in evaluating lay witness testimony. (Doc. 13 at 8-21.) In response, Defendant contends that the ALJ's decision is supported by substantial evidence and should be

---

[2]  A claimant's residual functional capacity is defined as the most he or she can do despite his or her limitations. 20 C.F.R. § 404.1545(a)(1).

[3]  "Medium work" is defined as "lifting nor more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 404.1567(c). The ALJ listed the following exceptions to his assessment: "occasionally climb ladders, ropes, or scaffolds; frequently climbing ramps or stairs; frequently balancing, stooping, crouching, kneeling, and crawling; frequent bilateral handling and fingering; avoid concentrated exposure to moving equipment and unprotected heights; limited to simple, unskilled work." (AR 22.)

affirmed. (Doc. 14 at 11.)

**A.  Medical Opinion Evidence**

Plaintiff argues that the ALJ did not offer specific and legitimate reasons,[4] supported by substantial evidence in the record, for rejecting the opinions of treating physician Nikhil Agarwal, M.D., and treating neurologist David Reynolds, M.D. (Doc. 13 at 15-21.)

Plaintiff began seeing treating physician Nikhil Agarwal, M.D. in September of 2008 (AR 242), and continued to be treated by him on a consistent basis through September of 2011 (AR 238-42, 333-37, 389-400). On August 12, 2010, Dr. Agarwal completed a "Medical Assessment of Ability to Do Work-Related Physical Activities." (AR 385-86.) In the assessment, he concluded that Plaintiff could not perform work for eight hours a day or five days a week on a regular and consistent basis due to diagnosed impairments of neuropathy and spina bifida. (AR 385-86.) Dr. Agarwal opined that Plaintiff could sit for less than two hours and stand or walk for less than two hours in an eight-hour work day. (AR 385.) Also, he opined that Plaintiff could lift and carry more than 15 pounds but less than 20 pounds. (*Id.*)

In assessing Plaintiff's residual functional capacity, the ALJ gave "no weight" Dr. Agarwal's opinion, reasoning that it was inconsistent with his own treatment records. (AR 26.) The ALJ explained that the records showed "normal physical examination on that day and on nearly every other visit" (AR 23), and "additional treatment notes from the same time period show additional normal examinations, state the claimant's conditions are well controlled with medications, and noted that he is still not compliant with diet requirements" (AR 26).

When evaluating the medical evidence throughout the five-step process, the ALJ must give appropriate consideration based on the source of testimony. The ALJ should afford the most weight to the treating physician's opinion, a lesser amount of weight to an

---

[4] Because Dr. Agarwal's opinion is contradicted by other medical opinions in the record (*see* AR 251-254, 321-327),the ALJ must offer specific and legitimate reasons for rejecting Dr. Agarwal's opinion. *See Orn,* 495 F.3d at 631.

examining physician's opinion, and an even lesser amount to a physician who has neither treated nor examined the claimant. *See Orn*, 495 F.3d at 631. If the treating physician's opinion is not contradicted by another physician, it is given controlling weight and may be rejected only by presenting clear and convincing reasons supported by substantial evidence in the record. *Id.* at 632. If the treating physician's opinion is contradicted, the ALJ must offer specific and legitimate reasons for rejecting the opinion. *Id.* The ALJ can "meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes*, 881 F.2d at 751. Moreover, an ALJ is not required to accept a brief and conclusory opinion from a treating physician that is unsupported with clinical findings or by the record as a whole. *Id.*; *Batson v. Commissioner of Social Security Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). When there are conflicting medical opinions, the ALJ must determine credibility and resolve the conflict. *Thomas v. Barnhart*, 278 F.3d 947, 956-57 (9th Cir. 2002).

First, in rejecting his opinion on the basis that physical examinations performed were "normal," the ALJ mischaracterizes Dr. Agarwal's exam notes. Rather, his treatment notes show that Plaintiff did not have "normal physical examination[s]," as the ALJ suggests. (AR 23, 26.) After each visit with Plaintiff, Dr. Agarwal completed a standard form where he could choose to evaluate different bodily system categories as "normal" or "abnormal." Although Dr. Agarwal rarely circled either "normal" or "abnormal" in the neurological category, on two occasions when he did, he assessed Plaintiff to be neurologically "abnormal." (AR 238, 337.) He routinely circled the "normal" category for Plaintiff's other systems, such as chest, cardiovascular, and abdomen. (AR 238-42, 333-37, 389-400.) However, Dr. Agarwal's failure to circle the word "abnormal" next to the term "neurological" on some occasions does not necessarily translate that Plaintiff's examinations were "normal." On the contrary, at each of Plaintiff's visits, Dr. Agarwal noted findings of Plaintiff's conditions, such as diabetes, neuropathy, depression, panic attacks, or hyperlipidemia, and recorded his advised course

of action to Plaintiff to treat or maintain each condition. (AR 335, 387, 390, 401-02.)

In rejecting his opinion, the ALJ also mischaracterizes the treatment records from August 12, 2010, the day Dr. Agarwal completed the medical assessment form. (AR 26, 385-86.) Although the ALJ noted that Plaintiff had a normal physical examination on August 12, 2010, the exam findings were far from normal. Dr. Agarwal noted that Plaintiff's diabetes was uncontrolled, that he should see a neurologist for numbness, and that he should continue on the medication for neuropathy. (AR 333.) Although Dr. Agarwal assessed Plaintiff's chest, cardiovascular system, abdomen, and extremities as "normal," the ALJ does not explain how these findings detract from his opinion that Plaintiff's ability to work is limited by his neuropathy and spina bifida impairments.

The ALJ additionally erred by rejecting Dr. Agarwal's opinion on the basis that Plaintiff's impairments were "well-controlled with medication." (AR 26.) While Dr. Agarwal reported that Plaintiff was doing well on his medications (AR 333, 335, 394),[5] that finding suggests only that Plaintiff was observed to have positively responded to treatment. Again, the ALJ does not reason how this observation controverts Dr. Agarwal's findings that Plaintiff's abilities are limited by his neuropathy. Comparatively, Dr. Agarwal continued to note that Plaintiff's diabetes was uncontrolled, and at most examinations, he advised Plaintiff to continue on his medications, indicating it was medically necessary to do so. (*See e.g*. AR 333, 395.) Dr. Agarwal also referred Plaintiff to a neurologist due to the continued numbness he was experiencing. (AR 333.)

In contrast, the ALJ gave "great weight" to the opinion of "State Agency reviewer" Rosalia Pereyra, reasoning that her opinion was consistent with the totality of the evidence. (AR 24-25.) However, in reviewing the denial of Plaintiff's disability claim on reconsideration, Pereyra, a Doctor of Psychology (Psy.D), primarily considers the record of Plaintiff's mental limitations. (AR 78-89.) Dr. Pereyra noted "[n]o RFC/MRFC assessments" were associated with the claim, and summarily determined Plaintiff was not

---

[5]   Plaintiff was prescribed Lantus for his diabetes and Neurontin (or Gabapentin) for his neuropathy. (*See* AR 335, 387, 390, 401-02.)

disabled. (AR 87, 89.) Further, Dr. Pereyra stated in her opinion that she gave "great weight" to the opinions of Dr. Brecheisen, Dr. Barker, and Dr. Joseph (AR 87), opinions which the ALJ assigned either "little weight" or "some weight" (AR 25-26).

The ALJ did not offer reasons that are specific, legitimate, and supported by the record, and therefore erred in rejecting Dr. Agarwal's opinion. Having reached this conclusion, the Court need not address Plaintiff's arguments concerning the ALJ's evaluation of Dr. Reynolds opinion or lay witness testimony.

## B.   Symptom Testimony

Plaintiff also argues that the ALJ did not offer clear and convincing reasons, supported by substantial evidence in record, for rejecting Plaintiff's symptom testimony. (Doc. 13 at 8-14.)

During his hearing before the ALJ, Plaintiff testified that he was diagnosed with diabetes. (AR 46.) As a result, he suffers from neuropathy that causes numbness in his feet, calves, and hands, as well as shooting pains that originate in his toes and shoot up his body. (AR 47.) The numbness in his feet causes him to often fall and sustain injuries, such the scratches on his hand and forehead he exhibited at his administrative hearing. (AR 48-49.) Plaintiff testified that his diabetes has also caused him to suffer vision loss. (AR 56-57.) He stated that he is continuously tired and frequently naps, sometimes three times a day. (AR 48, 59.)  He struggles with concentration and must be reminded to do certain things, such as take his medication or maintain his hygiene. (AR 59.)  Plaintiff indicated that he can only stand for about thirty minutes at one time and can only sit for thirty to forty minutes at a time. (AR 52-53.)  His sleep is frequently disrupted, and he testified he walks around at night to get the "circulation going."  (AR 52.)  Plaintiff testified he has hearing loss in one ear, cannot read or write due to learning disabilities, has arthritis in his knees, asthma, depression, and back pain due to spina bifida. (AR 39-40, 53-58.) Plaintiff indicated that as a result of his depression, he isolates himself from people and did not leave the house in the past; however, recently, he has begun leaving

the house four or five days a week and tries to walk for exercise to comply with his doctor's recommendations. (AR 57-58.)

In assessing Plaintiff's residual functional capacity, the ALJ found that while Plaintiff's impairments could reasonably be expected to cause his alleged symptoms, his "statements concerning the intensity, persistence and limiting effects of these symptoms [were] not credible." (AR 23.) The ALJ discredited Plaintiff's pain testimony because: (1) the severity of his symptoms was inconsistent with the objective evidence of record; (2) he had received only conservative treatment and was noncompliant with recommended treatment; (3) he had applied and received unemployment benefits; and (4) his impairment allegations were inconsistent with his account of why he was terminated from employment and his reported daily activities. (AR 23-24.)

To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, the ALJ must engage in a two-step analysis. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Bunnell v. Sullivan,* 947 F.2d 341, 344 (9th Cir. 1991)). The claimant, however, "need not show that [his] impairment could reasonably be expected to cause the severity of the symptom [he] has alleged; [he] need only show that it could reasonably have caused some degree of the symptom.'" *Id.* (quoting *Smolen v. Chater,* 80 F.3d 1273, 1282 (9th Cir. 1996)). "Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of [his] symptoms only by offering specific, clear and convincing reasons for doing so.'" *Id.* (quoting *Smolen*, 80 F.3d at 1281). General assertions that the claimant's testimony is not credible are insufficient. *See Parra v. Astrue*, 481 F.3d 742, 750 (9th Cir. 2007). The ALJ must identify "what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* (quoting *Lester v. Charter,* 81 F.3d 821, 834 (9th Cir. 1995)). In weighing a claimant's credibility, the ALJ may consider many factors, including, "(1)

ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Smolen*, 80 F.3d at 1284; *see Orn*, 495 F.3d at 637–39. The ALJ also considers "the claimant's work record and observations of treating and examining physicians and other third parties regarding, among other matters, the nature, onset, duration, and frequency of the claimant's symptom; precipitating and aggravating factors; functional restrictions caused by the symptoms; and the claimant's daily activities." *Smolen*, 80 F.3d at 1284. Nonetheless, "[o]nce the claimant produces medical evidence of an underlying impairment, the Commissioner may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence." *Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010); *Lester,* 81 F.3d at 834 (a Plaintiff's own testimony of disabling pain cannot be discredited "merely because [it is] unsupported by objective evidence."); *Smolen*, 80 F.3d at 1282 (the ALJ was not free to reject Plaintiff's subjective symptom testimony "simply because there is no showing that the impairment[s] can reasonably produce the degree of symptom alleged."). An ALJ is required to make a "credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas*, 278 F.3d at 958.

Here, the ALJ erred in discrediting the severity of Plaintiff's alleged symptoms based upon a lack of corroboration by the objective medical evidence. The ALJ found Plaintiff's impairments could reasonably be expected to cause the alleged symptoms, and cited no finding of malingering. (AR 23). Because the ALJ concluded Plaintiff had produced evidentiary proof of his impairments, he erred in discrediting the severity of Plaintiff's subjective symptoms because he believed they were unsupported by objective evidence. *See Berry*, 622 F.3d at 1234; *Lingenfelter*, 504 F.3d at 1036.

The ALJ further erred in relying on Plaintiff's treatment as a basis to discredit his

1 pain testimony. The ALJ first generally cites that Plaintiff's conditions were controlled
2 with medication (AR 23), but offers nothing to suggest that the medication alleviated or
3 eliminated Plaintiff's pain such that his symptom testimony was incredible. The ALJ
4 further relies on Plaintiff's lack of adherence to his diet as a basis to discredit his pain
5 testimony, in that he reported drinking "lots of soda" and did not increase his exercise.
6 (AR 23-24.) Yet, the ALJ does reason how Plaintiff's purported lack of dieting or
7 exercise shows that he is not telling the truth about his medical problems, and he omits
8 Plaintiff's testimony regarding his significant weight loss following his diabetes
9 diagnosis (AR 67). The ALJ similarly erred in discrediting Plaintiff's testimony on the
10 basis that "although he alleged disabling knee pain, the evidence showed he has only
11 been given ibuprofen for this condition and has treated it with heat and Bengay" (AR 26).
12 Plaintiff testified that there were no alternative treatments available for his arthritis (AR
13 55), and the ALJ does not suggest that a more aggressive form exists of which Plaintiff
14 could have availed himself. *Cf. Meanel v. Apfel,* 172 F.3d 1111, 1114 (9th Cir. 1999)
15 (doctor failed to prescribe available serious medical treatment).

16 Next, the ALJ found that "[f]urther reducing the claimant's credibility is the fact
17 that he received unemployment compensation… He would have had to certify that he
18 was physically and mentally able, willing and available to work in order to be eligible for
19 unemployment compensation. This is inconsistent with a claim for disability." (AR 24.)
20 The ALJ also erred in discrediting Plaintiff's pain testimony on this basis. "[W]hile
21 receipt of unemployment benefits can undermine a claimant's alleged inability to work
22 fulltime, the record here does not establish whether [Plaintiff] held himself out as
23 available for full-time or part-time work. Only the former is inconsistent with his
24 disability allegations." *Carmickle v. Commissioner, Social Sec. Admin.*, 533 F.3d 1155,
25 1161-1162 (9th Cir. 2008) (internal citations omitted). (*See* AR 42-44, 147-149.)

26 The ALJ additionally erred in relying on Plaintiff's termination as a basis to reject
27 his pain testimony.[6] The ALJ cites Plaintiff's "last employment further draws his

---

[6] Further, the ALJ's account that Plaintiff reported having "quit" his position

11

credibility into question. Although he reported he was terminated from his job due to crashing equipment and that this was because his neuropathy, EMG was normal for the lower extremities. Moreover, as noted above, he also continues to drive, which is very inconsistent with his story." (AR 24.) As addressed above, because the ALJ found evidence of Plaintiff's neuropathy, he may not discredit Plaintiff's testimony as to subjective symptoms merely because they are unsupported by objective evidence. *See Berry,* 622 F.3d at 1234. Likewise, the ALJ fails to reason how Plaintiff's ability to drive conflicts with his pain testimony. Plaintiff testified that he was terminated when he damaged construction equipment due to a lack of sensation in his hands and feet that precluded him from deciphering the movement of different objects under the operating machinery. (AR 63.) The ALJ fails to explain how this testimony is controverted by Plaintiff's ability to drive a car to familiar nearby locations, such as the city park, the grocery store, and his daughter's house. (AR 53.)

Lastly, the ALJ erred in discrediting Plaintiff's testimony on the basis of his reported daily activities. The ALJ cites that Plaintiff "drives his wife to work, fishes at the park, and walks for exercise… This is inconsistent with the claimant's alleged degree of neuropathy." (AR 24.) The ALJ's credibility determination in this regard is not persuasive, in that he failed to make any specific findings regarding whether Plaintiff's daily activities were transferable to the workplace. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (finding a claimant is not required to be "utterly incapacitated" to be eligible for benefits, and "many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication") (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)). Further, Plaintiff's daily activities, as he described them in his testimony, are consistent with his statements about the impairments caused by his pain. For example, while the ALJ critiqued Plaintiff's cell phone use, nothing indicates

---

apparently relies on what appears an inaccurate report of a consulting examiner rather than Plaintiff's own inconsistent statement. (*See* AR 321.)

12

that he would be entirely precluded from using a cellphone because of his impairments or the hand braces used to treat his impairment. Plaintiff even distinguished that his ability to use a cell phone improved with the assistance of speed dial programming. (AR 68.) Nonetheless, the ability to talk on the phone, occasionally drive, or take brief walks, "all while taking frequent hours-long rests, avoiding any heavy lifting, and lying in bed most of the day, is consistent with the pain" that Plaintiff described in his testimony. *Garrison v. Colvin*, __ F.3d __, 2014 WL 3397218, *17 (9th Cir. Jul. 14, 2014).

The ALJ did not offer reasons that are clear, convincing, and supported by the record, and therefore erred in discrediting Plaintiff's symptom testimony.

## IV. Remand for Award of Benefits

The Court finds that reversal and remand for an award of benefits is appropriate. In reversing the decision of an ALJ, the Court may remand with instructions to calculate and award benefits where: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison*, 2014 WL 3397218 at *20 (discussing "credit-as-true rule"); s*ee also Smolen*, 80 F.3d 1273; *Swenson v. Sullivan*, 876 F.2d 683, 689 (9th Cir. 1989). If the "credit-as-true rule" is satisfied, the Court may remand for further proceedings, instead of for an award of benefits, only "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Garrison*, 2014 WL 3397218 at *21.

Here, there are no outstanding issues to preclude a disability determination on the merits. More evidence and legal argument would not likely shed light on Plaintiff's functional capacity during the period at issue. The parties do not contest and the record shows that Plaintiff has severe impairments, and this finding is uncontroverted by any medical opinion in the record. As evident in the record and uncontested by the parties,

Plaintiff's impairments could reasonably be expected to cause the conditions which Plaintiff alleges.

As set forth above, the ALJ gave legally insufficient reasons to reject the opinion of Plaintiff's treating physician and Plaintiff's subjective symptom testimony. If the improperly discredited evidence were credited as true, it is clear that the ALJ would be required to find Plaintiff disabled on remand. The vocational expert testified that a person with the limitations opined by Dr. Agarwal, specifically sitting, standing, or walking less than two hours in a normal work day, would be precluded from working. (AR 74-75.) Likewise, the vocational expert testified that a person with the limitations testified to by Plaintiff would not be able to work "at all." (AR 73.)

There is also nothing in the record that casts serious doubt as to whether Plaintiff is, in fact, disabled. Both of Plaintiff's treating physicians opined that Plaintiff's diagnosed physical impairments would preclude him from sustained work. (AR 383-386.) These opinions are controverted only by the opinions of one-time examining consulting physicians who also diagnosed Plaintiff with his alleged impairments, but then summarily concluded that Plaintiff's conditions would impose *no* limitations. (*See* AR 251-254, 321-327.) These examiners offer no explanation for their findings, and their conclusions were rejected by the ALJ. (*See* AR 25-26, finding that "[t]here is sufficient evidence to support the claimant's allegation that his impairments affect him more than minimally.") Therefore, the Court concludes that these opinions do not create any doubt as to whether Plaintiff is disabled.[7]

In sum, the Court has considered the record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusions. The Court finds that the ALJ's decision is not supported by substantial evidence. Crediting as true the opinion of Plaintiff's treating physician and Plaintiff's subjective symptom testimony

---

[7] To the extent that the record also contains opinions of non-examining consultants, they also provide no reasonable basis to question the disability finding. *See Lester*, 81 F.3d at 831 ("[t]he opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician.").

14

as a matter of law, the Court finds that reversal and remand for an award of benefits is appropriate. *See Lester*, 81 F.3d at 834. Accordingly,

**IT IS ORDERED** that the final decision of the Commissioner of Social Security is **REVERSED**.

**IT IS FURTHER ORDERED** that this matter is **REMANDED** to the Commissioner of Social Security for a computation of benefits.

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter judgment accordingly.

Dated this 14th day of August, 2014.

Honorable Steven P. Logan
United States District Judge

15